F. E. KEELER, APPELLEE, V. ESTATE OF JAMES W. HILES ET AL., APPELLANTS.

FILED APRIL 19, 1919. No. 20327.

1. **Probate Court:** APPEAL: PLEADINGS. Upon appeal from the probate court, the district court may, in a proper case, direct that the cause be tried upon the transcript of the proceedings. No further pleadings are necessary unless the district court so directs.

2. **Bill of Exchange:** VALIDITY. Bank checks may be made payable at a fixed time after the occurrence of an event that is certain

103 Neb.—30

to happen. Rev. St. 1913, sec. 5322. A check made payable one day after the death of the maker is technically a bill of exchange, and is valid if given for a sufficient consideration.

3. **Appeal:** INCOMPETENT EVIDENCE. The findings of the district court upon the evidence will not be reversed because incompetent evidence was allowed, if there is sufficient competent evidence to require such findings.

4. **Executors and Administrators:** CLAIMS: EVIDENCE. The evidence indicated in the opinion is considered sufficient to support the findings of the trial judge.

APPEAL from the district court for Dawson county: BRUNO O. HOSTETLER, JUDGE. *Affirmed.*

*Hoagland & Hoagland* and *F. J. Byrd,* for appellants.

*H. M. Sinclair* and *W. A. Stewart, contra.*

SEDGWICK, J.

After the death of James W. Hiles, this appellee presented a claim against his estate for $8,000 upon two checks, which are printed in appellants' brief in the following form: "Gothenburg, Neb. Dec. 21, 1914. Bank of Brady. One day after my death pay $5,000 to my sister, F. E. Keeler. Five thousand and no/100. J. W. Hiles." Upon contest in the county court, the claim was allowed, and an appeal was taken by the estate to the district court. Upon trial in that court the claim was again allowed, and the case is appealed to this court. No pleadings were filed in the county court other than the claim itself with the two checks attached.

The appellants contend that the appellee filed a petition in the district court, and that her counsel, without leave of court, took the petition from the files and refused to return it. No such petition appears in the record, and, if the facts were as represented in the brief, the appellants' remedy would have been an order of the court upon counsel to return it, which might be compelled by the trial court. No attempt of this kind appears to have been made.

The son of the decedent files an answer in the district court in which he denied that the checks were ever signed or delivered by the decedent to the claimant, and alleged that there was no consideration for the checks, and that the claimant fraudulently caused the checks to be written and presented as the checks of the decedent. The trial court ordered that the cause be tried upon the transcript of the probate court, and, although this is complained of in the briefs, there is nothing in the record to show that any proper steps were taken to make the issues more definite.

It is objected that, the checks being payable after the death of the decedent, they must be considered as "of a testamentary nature," and therefore void as not in accordance with the law of wills. This depends upon whether the checks were given for a sufficient consideration. "Commercial paper may be made payable on any event, however remote, which must inevitably happen some time or other. Thus, it may be payable *on the death* of a certain person, or 'on demand after my decease,' or 'one day after date, or at my death.' " 1 Randolph, Commercial Paper (2d ed.) sec. 113. Rev. St. 1913, secs. 5319, 5322. There is no evidence that it was intended or considered as a gift.

It appears from the evidence that the decedent, being old and rather feeble, and having no one to care for him in his old age, wrote to the appellee, who is his half-sister and was residing in another state, urging her to come and make him a home and care for him. She accordingly came to Nebraska, and established a home, and the decedent lived with her, and she cared for him for three or four years. The decedent had property, including more cash in the bank than the amount of these checks, amounting in all (as shown by inventories on file) to $116,418, and his liabilities were something less than $4,000. He had no family, except one son of middle age, who was well provided for. The evidence sufficiently shows that, when he induced this

appellee to come to this state and care for him, both parties understood that he would compensate her for her services.

The evidence is quite indefinite as to the total value of the services of appellee, but that they were of considerable value is clearly shown. There was no agreement between them as to the amount that should be paid therefor, but it was understood by both parties that there would be compensation. The decedent fixed the amount of compensation, and, from his point of view, considering his condition and the necessity of some arrangement of the kind, and his financial resources, and that no one appears to have been dependent upon his bounty, the payment he made might seem a fair equivalent for the services rendered. Both parties to the contract appear to have been satisfied as to the compensation, and strangers to the contract are not in a position to contest it.

Objection is made to the competency of the appellee to testify as to transactions with the deceased. But she was first called as a witness for appellants, and if some testimony was allowed in her own behalf that was not fairly explanatory of her evidence offered by appellants, still the competent evidence was sufficient to support the findings of the trial judge. The admission of other evidence objected to as incompetent will not require a reversal, for the same reason. The findings of the trial court will not be reversed because of the admission of incompetent evidence, if the competent evidence is sufficient to support such findings. It will not be presumed that the court based its decision on incompetent evidence.

The judgment of the district court is

AFFIRMED.